## POPLAR WAVE ICE COMPANY, Respondent, v. MISSOURI EDISON ELECTRIC COMPANY, Appellant.

### St. Louis Court of Appeals, December 4, 1900.

1. **Contract, Construction of.** In the case at bar the plaintiff sues to recover for hauling a lot of coal which belonged to defendant, the owner and operator of an electric light plant in the city of St. Louis. The defendant used coal at two stations in the city, one of which is designated "A" and another designated "B" some distance apart and the coal in question was hauled from station "B" to station "A." Coal had been previously delivered to defendant by the Big Muddy Coal Company under a contract of date April 1, 1898. On account of the inability of the coal company, by reason of the inclemency of the weather to furnish the coal needed at station "A," it was agreed that a portion of the coal at station "B" should be hauled

to station "A." The plaintiff was employed to do the hauling by one Pavey, who was at the time the local manager of the coal company: *Held*, that under proper construction of the contract Pavey acted for the defendant in employing plaintiff to haul the coal.

2. **Practice, Appellate.** Where there is evidence tending to support the finding of a trial court, the judgment will not be disturbed by an appellate court.

Appeal from the St. Louis City Circuit Court.—*Hon. Jacob Klein,* Judge.

AFFIRMED.

*Albert Blair* for appellant.

It was error for the judge to conclude as a matter of law that in arranging with the Muckermann Ice Company, or at the direction of the latter with its subcontractor, the Polar Wave Ice Company, the agent of the Big Muddy Company, Mr. Pavey, was acting as the agent of the electric company and was authorized in behalf of that company to employ either the Muckermann Ice Company or the Polar Wave Ice Company to haul the coal from the reserve stock in question, and thereby involve said electric company in an obligation with either of said ice companies in the premises. Farrar v. Lyon, 19 Mo. 124; Downing v. Boulier, 21 Mo. 149; Nichols v. Carter, 49 Mo. App. 405; Fahy v. Springfield Grocer Co., 57 Mo. App. 73.

*Johnson & Richards* for respondent.

Divested of matter immaterial to the issue, this action will be seen to be based on one of the simplest legal propositions that may engage the attention. Plaintiff performed work and

labor for defendant. Defendant accepted the benefits of that work. Plaintiff was employed to do the work by Mr. Pavey of the coal company. Mr. Pavey had asked permission of defendant to have the hauling done. Permission was granted. Pavey employed plaintiff. The ratification of this employment, if ratification were necessary, is implied by the subsequent acts of defendant in recognizing plaintiff, and by defendant accepting the benefits of the employment.

BIGGS, J.—The defendant owns and operates an electric light plant in the city of St. Louis. The plaintiff sues to recover for hauling a lot of coal which belonged to defendant. The defendant used coal at two stations in the city, one of which is designated as Station "A," situated on Twentieth and Locust streets, and the other as Station "B," situated on Nineteenth and Gratiot streets. The coal in question was hauled from Station "B" to Station "A." It had been previously delivered to defendant by the Big Muddy Coal Company under a contract of date April 1, 1898. On account of the inability of the coal company, by reason of the inclemency of the weather, to furnish the coal needed at Station "A," it was agreed that a portion of the coal stored at Station "B" should be hauled to Station "A." The plaintiff was employed to do the hauling by one Pavey, who was at the time the local manager of the coal company. The main controversy is whether Pavey in employing plaintiff to do the work acted for his own company, or for the defendant. The case was submitted to the court without a jury. Upon the request of the defendant the court made written findings of fact and his conclusions of law thereon, to-wit:

"In the month of April, 1898, the defendant, Missouri Edison Electric Company, entered into a contract with the St. Louis & Big Muddy Coal Company under which the latter

company was to supply, for the period of one year from the first of April, 1898, all the coal which the electric company would require during said year at an agreed price. The contract contained a provision to the effect that the coal company should, for the term of twelve months, arrange with the Illinois Central Railroad Company to hold in storage at the terminals of said railroad company in East St. Louis approximately 2,500 tons of coal of the quality required to be furnished, to be held in reserve for the protection of the electric company in the event of any failure or inability to deliver the supply from the mines at any time during the year.

"The contract also contained a provision to the effect that the two companies should arrange on some equitable basis for a division of the extra expense resulting from the handling of such coal as was kept in storage and afterwards withdrawn from the storage point for the requirements of the electric company.

"The defendant company had several places in the city of St. Louis to which coal was to be delivered by the coal company under said contract, and the course of business between the two companies was such that the expense of hauling the coal from the railroad cars either in East St. Louis or the railroad depot in the city of St. Louis was paid by the electric company in addition to the price fixed by the contract as the price of the coal.

"The provision of the contract in relation to the storage of a reserve quantity of coal in the yards of the Illinois Central Railroad in East St. Louis was waived by the defendant company, and subsequently an arrangement was made between the electric company and the coal company, under which a large quantity of coal was delivered by the coal company to the electric company, at its premises on the corner of Nineteenth and Gratiot streets, in the city of Louis, and stored there

as a reserve instead of storing it in East St. Louis. The electric company paid for this coal so stored on its premises, and also paid for the hauling of the same.

"The hauling of the coal to be delivered by the coal company to the electric company was done under a contract between the coal company and the Muckermann Ice and Coal Company, and the bills for hauling the coal were made out monthly by the Muckermann Ice and Coal Company to the Big Muddy Company, audited by said company, and the amount of each month's bill was subsequently paid by the electric company, in addition to the price of the coal delivered.

"Under an arrangement between the Muckermann Ice and Coal Company and the Polar Wave Ice Company, the latter company was to do all the hauling of coal required for the station of the electric company located at Twentieth and Locust streets.

"Early in February, 1899, there was a spell of extremely cold weather in this region, and the representative of the coal company, Mr. Pavey, informed Mr. Pike, the manager of the Missouri Edison Electric Company, that the Big Muddy Coal Company would not be able to deliver from the mines the coal required at the several stations of the electric company, and that the reserve coal located at Nineteenth and Gratiot streets would have to be drawn upon.

"After some parley and delay, Mr. Pike consented that the reserve might so be drawn upon and that the coal needed at the station on Twentieth and Locust streets might be drawn from the reserve at Nineteenth and Gratiot streets. Thereupon the agent of the Big Muddy Coal Company notified the Muckermann Ice & Coal Company that they should haul coal from Nineteenth and Gratiot to Twentieth and Locust. Mr. Pavey was informed by the Muckermann Ice & Coal Company to notify the Polar Wave Ice Company of this, and later he

gave orders to the Polar Wave Ice Company to do said hauling.

"No agreement whatever was made between the parties as to the price to be charged for the hauling. Under these instructions the Polar Wave Ice Company, during the month of February, 1899, hauled from the reserve coal on the defendant's premises, at Nineteenth and Gratiot streets, one thousand seven hundred twelve and eight one-hundreths tons of coal. In handling the coal at the storage point the electric company furnished its own men to assist in loading the wagons of the Polar Wave Ice Company.

"Under the evidence the court finds that the reasonable value of the hauling of the coal, under the circumstances and under conditions of the weather at the time and the difficulties attending the hauling of the coal, to be thirty-seven and one-half cents per ton.

"Upon the foregoing facts, the court finds as a conclusion that the defendant company authorized Mr. Pavey to have said coal hauled from Nineteenth and Gratiot streets to the defendant's station at Twentieth and Locust streets, and as a conclusion of law the court finds that the defendant is liable to pay to the plaintiff the reasonable value of said haulings as fixed above.

"In accordance with these findings the judgment of the court is that the plaintiff recover of the defendant six hundred and forty-two dollars, with interest at the rate of six per cent per annum from the third day of August, 1899, the date of the institution of this suit, amounting to the sum of six hundred and fifty-one dollars and nine cents."

We have read with much interest the brief of counsel for appellant. He urges with ability many things in opposition to the findings and judgment of the circuit court, but to our minds the pivotal question is, was there evidence tending to support the finding of the circuit court that the defendant and

the Big Muddy Coal Company waived that clause in the contract requiring the coal company to keep 2,500 tons of coal in store at East St. Louis? If so, then in our opinion the judgment ought to be affirmed, regardless of all other questions, for if there was a waiver, then there was a complete delivery and acceptance of the coal delivered at Station "B," thereby discharging the contract of the coal company as to it. Under this view it is immaterial to inquire who was to pay for hauling the coal in the first instance, for the employment of the plaintiff to remove a portion of it from Station "B" to Station "A" could not be referable to or controlled by the original agreement. But on the other hand, if the original contract was so modified as to change the place for the storage of the "emergency stock" from East St. Louis to Station "B," then there could be no recovery in the action, because the original contract provided that the extra cost of 'handling the reserve stock was to be equitably adjusted between the defendant and the coal company, and this would be the result even though the defendant agreed with Pavey (as the circuit court found) to pay in full for the rehauling, as such a promise would have been without consideration. That there was substantial evidence of a waiver, is shown by a short extract from the testimony of Mr. Pike, the manager of the defendant:

"Q. There is nothing in that contract (for coal) in regard to the accumulation of a reserve stock of coal on this side of the river? A. No, sir. Q. That was outside of the contract entirely—that is according to the letter of the contract? A. According to the letter of the contract, yes, sir. Q. Was that reserve stock specified in the contract ever accumulated over in East St. Louis? A. No, sir. Q. Has that contract been modified in any way? A. Well only in that respect, that we have never insisted on the storage of the coal specified in East St. Louis. Q. How did you come to

store the coal on this side, Mr. Pike? A. Well, it was considered at one time, shortly after making the contract, that a strike at the mines seemed imminent, and the company bought some property adjacent to the boiler-house at Nineteenth and Gratiot streets, and arranged with the coal company to stock up, so that in case of strike or other trouble which might interfere with the delivery of coal we should have the stock there at the station to draw from.".

The testimony of this witness authorized the conclusion of the circuit court that there was a waiver, and that the coal stored at Station "B" was not intended to take the place of the extra stock provided for in the original contract. The finding is strengthened and supported by the fact that under the original contract the emergency stock was to remain the property of the coal company until used, while the coal delivered at Station "B" was paid for and became the property of the defendant.

There was evidence tending to support the other findings of the court, and as the findings warrant the judgment, we will affirm it.